UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ILYA BELOUS,

    Plaintiff,

v.

JAMES M. GANNON, *et al.*,

    Defendants.

Civ. No. 19-6186 (KM) (MAH)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.**

**I.   INTRODUCTION**

Plaintiff, Ilya Belous, a former state prisoner, was incarcerated at Morris County Correctional Facility ("MCCF"), in Morristown, New Jersey. He is proceeding through counsel with a civil rights complaint pursuant to 42 U.S.C. § 1983. (DE 1.) Now before the Court is Defendants' motion to dismiss.[1] (DE 10.) For the following reasons, the motion will be granted in part and denied in part.

**II.   BACKGROUND**

For the purposes of this motion, the Court accepts as true the factual allegations set forth in the complaint. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). The facts alleged in the complaint are sparse, but from them I discern the following.

---

[1] The complaint names the following Defendants: James Gannon, Christopher Klein, Alan J. Robinson, Bryan Bailey, Timothy Stewart, Michelle Molde, Anthony Lotz, John Davidek, and John and Jane Does 1-25. (DE 1 at 4–6.) For ease of reference, Defendants Gannon, Klein, and Robinson will be referred to as the "Supervisory Defendants." Defendants Bailey, Stewart, Molde, Lotz, Davidek, and John and Jane Does will be referred to as the "Correctional Defendants."

On February 18, 2017, Plaintiff was incarcerated at MCCF. (DE 1 at 16.) On that date, Plaintiff, who was "known to be a suicide risk"[2] asked Defendant Lotz "what would happen" if "he or someone" jumped from the second tier of the facility's cell block onto the floor below. (*Id.*) Plaintiff and Defendant Lotz apparently exchanged words "about it" and Defendant Lotz walked away. (*Id.*) Another Defendant, Officer Bailey, who was "supposed to be with"[3] Plaintiff, was in the area but on the phone. (*Id.*) Defendants Steward, Davidek, Molde, and John Does were also nearby. (*Id.*) After his conversation with Defendant Lotz, Plaintiff, who was shackled around his ankles, ascended the stairs to the second floor of the cell block and proceeded to jump to the floor below. (*Id.* at 7.) Plaintiff was thereafter taken to Morris County Hospital where he was diagnosed with a broken ankle. (*Id.*)

Plaintiff was hospitalized for three and a half weeks, sent to Trenton Psychiatric Hospital for two weeks, and returned to MCCF. (*Id.*) On March 21, 2017, while back at MCCF, Plaintiff again jumped from the second floor cell block, reinjuring his right ankle. (*Id.*) He was supposed to have been "supervised" at the time by the Correctional Defendants. (*Id.*)

On February 19, 2019, Plaintiff filed this civil rights complaint against Defendants raising a claim of deliberate indifference under 42 U.S.C. § 1983, as well as state law claims of negligence and negligent supervision. (*Id.* at 9–12.) Defendants thereafter filed this instant motion to dismiss. (DE 10.) Plaintiff filed papers in opposition (DE 14), and Defendants filed a reply (DE 15). The matter is now fully briefed and ready for disposition.

---

[2]     Plaintiff does not indicate why or how he was known as a "known suicide risk."

[3]     It is unclear what Plaintiff means by "supposed to be with."

### III.     LEGAL STANDARD

   *a. Motion to Dismiss Standard*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See New Jersey Carpenters & the Trustees Thereof*, 760 F.3d at 302; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Id.* at 678.

3

*b. § 1983 Standard*

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

**IV.   ANALYSIS**

Defendants move to dismiss the complaint on the grounds that it fails to sufficiently allege Plaintiff had a vulnerability to suicide or that Defendants were deliberately indifferent to that vulnerability. (DE 10-1 at 17.) "The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Third Circuit has held that an individual's vulnerability to suicide constitutes a serious medical need. *See id.* at 227; *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Thus, to state a claim that prison officials were deliberately indifferent towards a prisoner's vulnerability to suicide, the plaintiff must allege:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Palakovic*, 854 F.3d at 223–24.

### i.     Particular Vulnerability to Suicide

Defendants contend that Plaintiff has not shown there was a strong likelihood that he would attempt suicide. (DE 10-1 at 17–18.) They assert that Plaintiff's mere inquiry about "what would happen" if "he or someone" jumped from the second floor of the cell block was not a sufficient expression of suicidal ideation and there was no other indication that he would harm himself. (*Id.* at 18; DE 15 at 3.) Plaintiff, however, maintains that he was a "known suicide risk." (DE 14 at 13.) He alleges that, at the very least, his attempt to commit suicide on February 17, 2017 should have alerted Defendants to his suicidal ideations before his second attempt on March 21, 2017. (*Id.*)

A prisoner's "strong likelihood" of suicide "must be 'so obvious that a lay person would easily recognize the necessity for' preventative action." *Palakovic*, 854 F.3d at 222 (quoting *Colburn*, 946 F.2d at 1025). An individual's documented history of suicidal behavior, including prior attempts to kill themselves or declared thoughts about killing themselves, demonstrates such a strong likelihood. *Id.* at 230 ("When a mentally ill, depressed person has attempted to kill himself multiple times, has engaged in self-harm, declares he has been thinking about killing and harming himself, and has made an actual plan of how he would carry out his own suicide, it cannot be said as a matter of law that the risk of suicide is nothing more than a "mere possibility." (quoting *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 322 (3d Cir. 2005))).

Here, Plaintiff has sufficiently alleged that he had a particular vulnerability to suicide. Plaintiff's attempt to commit suicide on February 17, 2017 by jumping from the second floor of

the cell block, and his subsequent hospitalization at Trenton Psychiatric Hospital, demonstrate that the risk he would commit suicide was more than a "mere possibility." Thus, Plaintiff has established the first prong of his deliberate indifference claim.

> ii. *Prison Official's Knowledge*

Defendants next argue that there is no information contained within the complaint, other than Plaintiff's comment to Defendant Lotz, which would lead to the conclusion that any of the Defendants knew or should have known that Plaintiff was particularly vulnerable to suicide. (DE 10-1 at 19.) To the extent Plaintiff did make remarks to Defendant Lotz, Defendants argue ,these remarks were equivocal and did not sufficient express an intent to self-harm. (*Id.*) Plaintiff responds that his statement to Defendant Lotz was a clear expression of suicidal intent and that, after his first suicide attempt and subsequent hospitalization at Trenton Psychiatric, all of the Defendants should have known of his suicidal tendencies. (DE 14 at 14.)

It is not necessary that a prison official have "a subjective appreciation of the detainee's particular vulnerability." *Palakovic*, 854 F.3d at 231 (citing *Woloszyn*, 396 F.3d at 320). "Rather, prison officials may 'know' of a particular vulnerability to suicide where they have knowledge of a history of suicide attempts or a diagnosis identifying suicidal propensities, which can be presumed if all of this information is accessible in the prisoner's records." *Mullin v. Balicki*, Civ. No. 11-247, 2019 WL 2315044, at *5 (D.N.J. May 31, 2019) (citing *Palakovic*, 854 F.3d at 230-31). In short, the officials will be deemed to have knowledge if the facts in their possession are clear enough.

In this case, Plaintiff has not alleged any facts which demonstrate that the Supervisory Defendants were aware of Plaintiff's particular vulnerability. Rather, Petitioner provides only formulaic recitations of the elements of his claim–that each of the Supervisory Defendants were

6

aware of his serious medical need and were deliberately indifferent to that need. (DE 1 at 8.) Such threadbare legal conclusions are insufficient to permit imputation of knowledge to the Supervisory Defendants.

As for the Correctional Defendants, however, Plaintiff has provided sufficient facts to demonstrate that they knew or should have known of Plaintiff's vulnerability to suicide. Specifically, Plaintiff states that each of the Correctional Defendants was present when Plaintiff first leapt from the second floor on February 17, 2017. This fact alone demonstrates that the Correctional Defendants had actual knowledge of Plaintiff's history of suicide attempts and should have been aware of his serious medical need. (And of course it puts his allegedly ambiguous remarks to Lotz in a different light.) Accordingly, Plaintiff has met the second prong of the deliberate indifference claim with respect to the Correctional Defendants.

### iii. Reckless or Deliberate Indifference

Finally, Defendants assert that, even if accepted as true, none of Plaintiff's factual allegations demonstrate that they acted with deliberate indifference. (DE 10-1 at 20.) Plaintiff, however, maintains that after his statement to Defendant Lotz, the officers "charged with monitoring Plaintiff's activity abandoned him to his compulsions," and that, at the very least, Defendants should have known after Plaintiff's first suicide attempt that he required supervision. (DE 14 at 14–15.) He submits that this lack of supervision constituted reckless indifference towards his wellbeing. (*Id.*)

With respect to a prisoner's risk of suicide, the Third Circuit has stated the deliberate indifference standard demands "something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide." *Palakovic*, 854 F.3d at 231 (quoting *Woloszyn*, 396 F.3d at 320). "[I]t would be inappropriate," wrote the Court of Appeals, "to place

7

custodial officials in a position in which they must guarantee that an inmate will not commit suicide." *Id.* at 222 (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 669 (3d Cir. 1988)); *Alexander v. Monroe Cty.*, 734 F. App'x 801, 804 (3d Cir. 2018). Therefore, the deliberate indifference standard requires "a relatively high level of culpability on the part of prison officials before holding them accountable, *i.e.*, reckless or deliberate indifference to that 'strong likelihood' of suicide." *Palakovic*, 854 F.3d at 222 (citing *Colburn*, 838 F.2d at 1024–25).

Here, as to the Supervisory Defendants, Plaintiff has again not provided any factual allegations regarding their deliberate indifference. Instead, Plaintiff provides only the bare legal conclusions that they knew of Plaintiff's vulnerability to suicide and evinced deliberate indifference towards that vulnerability. (DE 1 at 8.) Absent additional information, these conclusory allegations are insufficient to state a claim. *See Twombly*, 550 U.S. at 555.

Plaintiff has, however, alleged factually that the Correctional Defendants evinced a deliberate indifference towards his vulnerability to suicide. As discussed above, the Correctional Defendants were aware of Plaintiff's suicidal tendencies, yet they allegedly failed to monitor or supervise him. Although the complaint does not provide a lot of information, at the motion to dismiss stage, it is sufficient to allege facts to suggest the defendants "had awareness of [plaintiff's] vulnerability to suicide." *Mullin*, 2019 WL 2315044, at *6 (finding that officer defendants who were informed of plaintiff's suicidal tendencies but failed to "adequately monitor" plaintiff, demonstrated a reckless indifference).

8

Accordingly, I find that Plaintiff has adequately pled a deliberate indifference claim against the Correctional Defendants, but has not done so in regard to the Supervisory Defendants. Therefore, the claims against the Supervisory Defendants will be dismissed.[4]

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (DE 10) will be granted in part and denied in part. The claims against Defendants Gannon, Klein, and Robinson will be dismissed without prejudice. The motion to dismiss the claims against Defendants Bryan Bailey, Timothy Stewart, Michelle Molde, Anthony Lotz, John Davidek, and John and Jane Does 1-25 is denied. An appropriate order accompanies this opinion.

DATED:  June 29, 2020                                                  /s/ Kevin McNulty

                                                                         KEVIN MCNULTY
                                                                         United States District Judge

---

[4] Having determined that Plaintiff has sufficiently established a § 1983 claim over which this Court has jurisdiction, I need not address Defendants' supplemental-jurisdiction argument that the dismissal of the federal claims requires dismissal of the state law claims as well. (DE 10-1 at 22.)